UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIANA K., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 4:23 CV 828 JMB |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Procedural History**

On April 27, 2021, Plaintiff Diana K. filed an application for disability benefits, alleging that her disability began on April 21, 2021 (Tr. 155) because of Rheumatoid Arthritis (Tr. 197). Plaintiff's claims were denied upon initial consideration and reconsideration (Tr. 58-67). Plaintiff then requested a hearing before an ALJ (Tr. 99). Plaintiff appeared at the hearing (with counsel) on June 9, 2022, and testified concerning the nature of her disability, her functional limitations, and her past work (Tr. 33-57). The ALJ also heard testimony from Theresa Wolford, a vocational expert ("VE") (Tr. 18-57). After considering Plaintiff's testimony and the VE's testimony, and after reviewing the other relevant evidence of record, the ALJ issued a decision on July 19, 2022, finding that Plaintiff was not disabled, and therefore denying benefits (Tr. 10-32). Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration,

which denied her claim on May 1, 2023 (Tr. 2-3). Accordingly, the decision of the ALJ is the final decision of the Commissioner. Plaintiff has therefore exhausted her administrative remedies, and her appeal is properly before this Court. See 42 U.S.C. § 405(g).

## II.  Evidence Before the ALJ

### A.  Disability and Function Reports and Hearing Testimony

Plaintiff was born in September, 1969 and was almost 52 years old on the alleged onset date (Tr. 193). Since 2007 she has earned over $20,000 a year except in 2020 and 2021 (Tr. 172).

In a May, 2021 Function Report, Plaintiff stated that she has "severe pain," that she cannot stand or sit for 8 hours, that her hands swell, her hips make it difficult to walk, and "everything [she tries] to do cripples [her]" (Tr. 221-228). She has difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing and using her hands. She can lift nothing more than 20 pounds. She drives short distances, shops for household items, fishes twice a month (while sitting), visits with others and generally does not appear to require assistance managing her finances, engaging in self-care (although she had difficulty cleaning herself after using the bathroom), preparing meals (sandwiches and frozen foods), and completing household chores.

In a September 2021 Function Report, Plaintiff reported much more severe physical restrictions and disabling conditions (Tr. 238-244). She stated that she has trouble with simple tasks like peeling a potato, walking in the park, and putting on shorts. She indicated that she does not engage in much physical activity and is a "couch potato." She cannot handle pots and pans for cooking, she does dishes and laundry but limits other household chores, she no longer completes yardwork; but she still shops and walks outside in the yard once a day if the temperature is acceptable. She fishes less often (3 times a year), does not socialize, and avoids activities that

require use of her shoulders and hands. She cannot lift more than 10 pounds and can only walk a quarter mile before resting.

At the June 9, 2022 hearing, Plaintiff testified that she lives alone (Tr. 41). She graduated from high school and worked for Lowell MFG Company for 22 years;[1] thereafter, she only worked for a couple of companies for a short while because of her physical condition (Tr. 42-43). At Lowell MFG, Plaintiff did heavy work – she worked a metal stamper, drove a forklift, unloaded steel trucks, received materials, and lifted up to 70 pounds of material (Tr. 43-44). Currently, she drives around twice a week, but no more than 20 miles because it hurts her lower back (Tr. 41). She can sit for 45 minutes before she needs to get up (Tr. 42).

As to her functional limitations, she testified that her hands swell up and cramp from repetitive motion, she cannot stand for longer than an hour before she is "toast," 30 minutes of walking does not bother her, and she cannot lift more than 10 pounds (Tr. 44-45). She walks slowly, avoids stairs, has pain from twisting or stretching to reach things, and has fallen from leaning over (Tr. 45-46). At the time of the hearing, she takes Tizanidine, that makes her sleepy, and energy supplements (Tr. 46). During a typical day, she takes care of her plants, walks around her yard, does laundry and dishes, vacuums, and tries to stay busy inside her house and her yard (Tr. 46-47).

In describing her condition, Plaintiff testified that she has shooting back pain that travels to her feet and into her shoulders at least once a week that seems to get worse every year (Tr. 47, 51). She has trouble reaching for things and holding items with her hands, which swell, and she loses feeling in her fingers (Tr. 49-51). She tries to do her home physical therapy exercises, but she is in too much pain to complete the exercises (Tr. 48). In order to deal with her pain, she tries

---

[1] In her Function Reports, Plaintiff noted that she was fired from this job because of another person who "didn't like" her (Tr. 243).

Page **3** of **16**

to exercise, lie down, and sit in her recliner (Tr. 49). She has discussed pain treatments and therapy with her doctor, but she requires financial assistance which she is in the process of getting (Tr. 50).

The VE testified that Plaintiff's past work as a press operator, laborer, truck driver, receiving clerk, and crane operator was medium to heavy work (Tr. 53). The VE was asked to determine whether someone of Plaintiff's age, and with her education, work experience, and specific functional limitations, would be able to perform her past work (Tr. 53). These functional limitations include: lifting up to 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours and sit for 6 hours in a normal 8-hour workday with normal breaks; occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to excessive vibration and operational control of moving machinery; and, avoid non-protected heights and exposure to hazardous machinery (Tr. 53). The VE testified that such a hypothetical person would not be able to do Plaintiff's past relevant work nor did she have any transferrable skills at the sedentary level (Tr. 54). However, other light jobs exist in the national economy including cleaner, housekeeping, and cafeteria attendant (Tr. 54).

The ALJ next asked the VE to testify about the work opportunities for somebody with the more restrictive limitations (lifting 10 pounds occasionally and standing/walking for 2 hours as oppose to 6) than above but at the sedentary level (Tr. 54). The VE testified that only sedentary jobs would exist (Tr. 54).

The ALJ next added to the hypothetical – that a person could handle objects using bilateral upper extremities (Tr. 54). The VE testified that the same jobs would be available (Tr. 55). If the hypothetical person could only occasionally handle objects, however, there would be no light jobs available.

**B.     Medical and Opinion Evidence**

The administrative record before this Court includes medical records covering Plaintiff's health treatments from July 2020 through May, 2022.  From the records, it appears that Plaintiff's treating physician is Dr. Jennifer Barbin, although there are limited treatment notes from this doctor.

On July 16, 2020, Plaintiff presented at an emergency room with abdominal pain and was diagnosed with diverticulitis (Tr. 286, 296).  On December 14, 2020, she had an x-ray performed of her shoulders because of pain – it revealed degenerative changes, mild osteopenia (bone loss), and mild-to-moderate osteoarthritis (Tr. 315-316).

Plaintiff was treated by Dr. Barbin on May 10, 2021 during an office visit (Tr. 495).  It is clear from the visit that she had been seen by Dr. Barbin previously, but there are no detailed records of these visits.  The visit was to discuss arthritis and to request diagnostic testing.  Dr. Barbin noted that she complained of pain and joint swelling that was worsening in her left and right knees and hips (Tr 495-496).  Upon physical examination, she was not in acute distress but had tenderness in her hip and knee joints with no swelling and normal range of motion in her cervical back (Tr. 498-499).  Dr. Barbin ordered imaging and a referral to rheumatology (Tr. 504).  She was prescribed Meloxicam (non-steroidal anti-inflammatory) and Prednisone (a corticosteroid) and told to discontinue Naproxen (Aleve) (Tr. 506).  Left and right knee x-rays in May, 2021 were unremarkable or revealed "no significant arthritis" (Tr. 326-27, 331, 520, 522).  A left hip x-ray on the same date revealed a bone cyst or possibly "a more significant lesion such as an osteoid osteoma"; whereas on the right hip there was nothing remarkable (Tr. 328, 330, 517-518, 519).  The medical records reveal a diagnosis on primary osteoarthritis involving multiple joints.

On August 25, 2021, Plaintiff was treated by Dr. Jeanne Carroll (a Rheumatologist) upon referral by Dr. Barbin for joint pain.  Upon physical examination, Dr. Carroll noted joint pain but found no clubbing, cyanosis, or swelling (Tr. 350).  As set forth in these records, a November, 2020 x-rays showed no arthritis in the left hand but did show "tiny spurs seen at the bases of the 4th and 5th distal phalanges" with "no other significant bone or joint space abnormality" (Tr. 351-352).  Dr. Carroll noted that there was a "low suspicion of inflammatory arthritis" and suggested other pain medications (Tr. 352).  Other than ordering more diagnostic testing and suggesting other treatment, there is no indication that Dr. Carroll prescribed any treatment or required a follow-up visit.

Plaintiff had a fall around February 28, 2022 and an x-ray was taken of her Sacrum Coccyx (tail bone).  The x-ray showed moderate degenerative changes, mild bilateral hip osteoarthritis, and no fracture (Tr. 462).  An x-ray of her lumbar spine taken that same day showed stable spondylosis compared to a previous November, 2020 x-ray, no fracture, no acute osseous abnormality, and degenerative changes (Tr. 464).  No additional treatments were prescribed or suggested after this fall – Plaintiff was directed to follow-up with additional concerns (Tr. 468).

Plaintiff next saw Dr. Barbin on March 6, 2022 (Tr. 481).  She was seen for her chronic back pain in the lumbar spine and decreased grip strength and numbness in her hands (Tr. 482).  Upon physical examination, she was found to have normal range of motion in her cervical and lumbar spine, but with bony tenderness (Tr. 485).  She also had decreased grip strength but good arm strength, no numbness, and negative Tinel and Phalen signs (Tr. 485).[2]  Additional diagnostic testing was ordered, she was referred to physical therapy, and Tizanidine (muscle relaxer) was

---

[2] According to the Cleveland Clinic, these tests are used to diagnose carpal tunnel syndrome.  Various hand positions and movements are used to determine whether there is tingling or numbness.  CLEVELAND CLINIC, *Phalen's Test*, https://my.clevelandclinic.org/health/diagnostics/25133-phalens-test (last visited July 17, 2024).

Page 6 of 16

continued, Naproxen (Aleve) was continued but Meloxicam and Predisone were discontinued (Tr. 492, 494).

Plaintiff had an initial visit for physical therapy on March 24, 2022 for degenerative disc disease of the lumbar spine after being referred by Dr. Barbin (Tr. 375, 382). At that time, Plaintiff complained of years-long low back pain that made it difficult to move (Tr. 382). She reported sitting, standing, and walking limitations, in addition to sleep issues and pain (Tr. 382-383). A March 18, 2022 lumbar MRI, showed mild degenerative changes of the lumbar spine; however, at the L5-S1 level, there was an "annular fissure and a small central disc protrusion without substantial neuroforaminal or canal stenosis" – the result was a diagnosis of degenerative disc disease (Tr. 383, 418, 423, 428). She demonstrated some functional limitations, including difficulty standing after sitting (Tr. 383). She was scheduled for additional physical therapy, twice per week (Tr. 384). At the time, Plaintiff was taking Naproxen and Tizanidine (Tr. 439). It is unclear from the record whether she attended additional physical therapy sessions.

Plaintiff followed up with Dr. Barbin on April 11, 2022 (Tr. 476). Plaintiff indicated that physical therapy made her pain worse (Tr. 476). While she had no swelling or edema in her hands, she did note tenderness and decreased grip strength (Tr. 479). Her medications were continued at the same dose (Tr. 478). Dr. Barbin filled out a disability form at this visit (Tr. 480). In that form, Dr. Barbin noted diagnoses of bilateral hand pain and degenerative disc disease of the lumbar spine and noted symptoms of chronic back pain, hand pain, weakness and swelling (Tr. 525).

As to functional limitation, Dr. Barbin indicated that Plaintiff could occasionally lift/carry 10 pounds, rarely lift 20 pounds, and never lift 50 pounds; that she could never crouch, crawl, or climb, could rarely twist or stoop, and could occasionally balance; that she could rarely use hands and arms; that she could sit for 45 minutes and no more than 2 hours in a workday; that she could

stand for 1 hour and no more than 2 hours in a workday; that she needed daily unscheduled breaks; that she needs an assistive device, that she needs to elevate her legs 25% of the time; that she would be off-task more than 50 % of the time; that she requires low work stress; and that she needs more than 4 days off per month (Tr. 526-527).

A subsequent Neurodiagnostic examination to evaluate hand weakness and numbness of her hands on April 13, 2022 revealed no abnormalities (Tr. 507).

Plaintiff underwent a consultative examination by Dr. Bobby Enkvetchakul on July 1, 2021 (Tr. 340-346). Plaintiff reported pain in all her joints, but especially her right shoulder, elbow, hip, and knee. At the time, she was taking Meloxicam, a non-steroidal anti-inflammatory drug. Upon examination, she appeared to have full range of motion and there was no evidence of "significant joint deformity in the upper or lower extremities" (Tr. 344). Dr. Enkvetchakul noted that there were limited medical records but some x-rays showing mild to moderate arthritis in the shoulders (Tr. 344). Plaintiff exhibited subjective joint pain "without evidence of significant ongoing pathology" (Tr. 344). Dr. Enkvetchakul acknowledged that degenerative changes can cause some joint pain, but, along with the clinical findings of that day, did not support any functional limitations or restrictions (Tr. 344). Therefore, Dr. Enkvetchakul found no limitations on Plaintiff sitting, standing, walking or carrying, reaching, lifting objects or handling objects in a work environment (Tr. 345).

### III. Standard of Review and Legal Framework

To be eligible for disability benefits, plaintiff must prove that she is disabled under the Act. See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).  A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009).  Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process).  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.  Pate-Fires, 564 F.3d at 942.  "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)).  At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e).  The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work.  Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).  If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to

establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." Id.; See also, Ross v. O'Malley, 92 F.4th 775, 778 (8th 2024). Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside

the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011); Ross, 92 F.4th at 778. A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV. The ALJ's Decision

The ALJ's decision in this matter conforms to the five-step process outlined above (Tr. 13-32). The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 23, 2021 (Tr. 16). At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of lumbar spine, primary osteoarthritis involving multiple joints, and obesity (Tr. 16). The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment (Tr.16-18). The ALJ specifically addressed listings 1.15, 1.16, and 1.18 (Tr. 18-19).

The ALJ next determined that Plaintiff had the RFC to perform light work except she can lift up to 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours and sit for 6 hours in an 8-hour work day with normal breaks; occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch and crawl; frequently handle objects using bilateral extremities; avoid concentrated exposure to excessive vibration and operational control of moving machinery; and avoid unprotected heights and exposure to hazardous machinery (Tr. 18). In assessing Plaintiff's RFC, the ALJ summarized the medical record; written reports from Plaintiff; Plaintiff's work history; and Plaintiff's testimony regarding

her abilities, conditions, and activities of daily living (Tr. 18-24).  The ALJ also considered that Plaintiff is categorized as closely approaching advanced age with at least a high school education, and that transferability of skills was not material to a determination of disability (Tr. 25).

At step four, the ALJ concluded that Plaintiff is not capable of returning to her past relevant work (Tr. 25).  However, at step five, the ALJ found that Plaintiff could perform other work in the national economy including cleaner housekeeping, cafeteria attendant, and mail clerk (Tr. 26).  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from April 23, 2021 to July 19, 2022 — the date of the decision (Tr. 25-26).

### V.  Discussion

In her brief, Plaintiff makes one argument: that the ALJ created an RFC based on his interpretation of the medical evidence rather than on the "functional evidence" (Doc. 12).  In making this argument, Plaintiff states that the ALJ failed to support his conclusion with some affirmative medical evidence of her ability to function in the workplace, that he did not explain how the medical evidence related to his RFC finding, and that the conclusion is inconsistent with Noerper v. Saul, 964 F.3d 738 (8th Cir. 2020).  Plaintiff's argument is convincing.

A claimant's RFC is the most she can do despite her physical or mental impairments. Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004).  It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.  20 C.F.R. §§ 404.1546, 416.945, 416.946; Noerper, 964 F.3d at 745-746 (an RFC is developed based on the medical records, observations of treating physicians, and a claimant's statements).  In determining Plaintiff's RFC, the ALJ may consider the medical opinion evidence.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis, and prognosis;

what [she] can still do despite [her] impairments; and [her] physical and mental restrictions." 20 C.F.R. §§ 404.1527(a)(1); 416.927(a)(1) (2017). While some medical evidence must support the ALJ's RFC finding, there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. Myers v. Colvin, 721 F.3d, 521, 526-27 (8th Cir. 2013). "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." Wallenbrock v. Saul, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2013)).

As noted above, the ALJ found that Plaintiff had the RFC to perform light work with some restrictions. Light work:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) and § 404.967(b). The ALJ limited Plaintiff's light work capacity to:

> can only lift up to 20 pounds occasionally, and lift/carry up to 10 pounds frequently. She can stand/walk for about 6 hours and sit for up to 6 hours in an 8 hour work day, with normal breaks. She can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch and crawl. She can frequently handle objects using her bilateral upper extremities. She should avoid concentrated exposure to excessive vibration and operational control of moving machinery. She should avoid unprotected heights and exposure to hazardous machinery.

(Tr. 18). In explaining the limitations found, the ALJ stated:

> Accordingly, the undersigned finds the claimant's lumbar spinal issues and osteoarthritis reasonably limit her to light work with postural and climbing limitations. Further, the evidence of bone spurs in her hands and osteoarthritis in

>her shoulders requires manipulative limitations, while her reports of falls, and viewing this evidence in a light most favorable to the claimant, requires a limitation from environmental issues and unguarded hazards. The above residual functional capacity provides for these limitations.

(Tr. 24). As to the medical evidence in relation to Plaintiff's statements of disabling conditions, the ALJ concluded:

>In sum, while the claimant continues to advocate severe back pain and limitations in her ability to sit, stand, walk, and use her hands, the medical evidence reports only mild to moderate findings at most, with no clear diagnosis of any particular ailment in her hands, despite a nerve conduction study and a rheumatology referral. Her providers make little mention of any significant difficulty standing, walking or sitting, nor of upper extremity weakness except for a mildly decreased grip, despite her subjective reports. Accordingly, the medical evidence tends to support only mild to moderate limitations due to her musculoskeletal impairments at most.

(Tr. 21-22).

In Noerper, the Eighth Circuit held that an RFC must be supported by "some medical evidence" of the claimant's "ability to function in the workplace" – evidence that is "enough that a reasonable mind would find it adequate to support a conclusion." Id. 964 F.3d at 744 (quotation marks and citations omitted). While the RFC determination is reserved to the Commissioner and is not determined exclusively from the medical records, there must be some evidence in the record supporting the conclusion.

The ALJ in this case appears to have equated Plaintiff's "mild to moderate osteoarthritic changes" in her shoulders, the "tiny spurs" in her right hand, "unchanged multilevel spondylosis in her lumbar spine," "moderate degenerative changes in her sacroiliac joints," and "mild bilateral hip osteoarthritis," and other "mild to moderate" moderate findings with "mild to moderate" functional limitations. In doing so, the ALJ did not explain how "mild to moderate" diagnoses lead to the functional limitations found; that is, he does not explain why Plaintiff would be limited to 6 hours of standing and 6 hours of sitting or to what extent she should be limited in use of her

Page 14 of 16

extremities. First, the ALJ seemingly discredited Plaintiff's own statements of the functional limitations that result from her conditions. However, it is unclear what Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), factors were utilized. Lowe v. Apfel, 226 F.3d 969, 971-972 (8th Cir. 2000). Second, the ALJ notes that no treating doctor set forth Plaintiff's functional limitations in any treatment notes but there are no statements of any functional limitations (supporting or detracting from Plaintiff's claims) as to her shoulders and hands. Finally, the ALJ states that Dr. Enkvetchakul's July, 2021 consultative examination was "remarkably normal" with no functional limitations noted (Tr. 20). But, the ALJ does not square Dr. Enkvetchakul's findings with Plaintiff's statements at the hearing, in her function reports, and to her doctors, that her functional ability was getting worse over time.

An ALJ may consider that the absence of objective medical evidence may discount a claimant's statement of functional limitations but may not rely exclusively on the lack of such evidence in discounting a claimant's statements. Halverson v. Astrue, 600 F.3d 922, 931–32 (8th Cir. 2010) (stating an ALJ may not discount a claimant's subjective complaints "solely because they are unsupported by objective medical evidence" but may consider "the absence of objective medical evidence to support the complaints"); See also, 20 C.F.R. § 404.1529(c)(2) (stating objective medical evidence is useful in making reasonable conclusions about the intensity and persistence of a claimant's symptoms). Certainly, there is limited medical evidence in this case that translates Plaintiff's medical conditions into functional limitations. The ALJ was justified in rejecting the opinion evidence that draws the comparison and in noting the lack of medical support for Plaintiff's claims.

However, there is medical evidence of back, shoulder, hand and hip conditions that may affect her functional limitations. Plaintiff testified as to the severity of her condition and the ALJ is required to provide some minimal explanation as to why Plaintiff's statements are not credible. While her primary care doctor noted no swelling or stiffness or numbness and did not prescribe any medication other than Aleve to address pain, Plaintiff indicated that she did not have the funds to pursue additional pain treatment, something that the ALJ mentions but does not evaluate. Nor did the ALJ evaluate Plaintiff's claims that she was unable to hold a job (after the conclusion of the 22-year job) because of her physical condition. And, as noted by the ALJ, there is no evidence that Plaintiff saw a physical therapist more than once; however, there is no analysis of Plaintiff's statements that exercise caused her pain to worsen and medication resulted in sleepiness.

\* \* \* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is not supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **reversed** and this matter is **remanded** for further consideration.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 29th day of July, 2024

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE